The undersigned have reviewed the Opinion and Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence, including the testimony of James Willis. However, upon reconsideration of the evidence, the Full Commission reach the same facts and conclusions as those reached by the deputy commissioner except for modifications to the Findings of Fact and the reversal of the deputy commissioner's ruling on the admissibility of the testimony of James Willis. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and the ultimate award.
***********
RULING ON EVIDENTIARY MATTERS
The deputy commissioner's ruling on the admissibility of testimony of Jerry Willis (transcript page 52; lines 6-8) is REVERSED. Defendants' objection is OVERRULED and testimony of Jerry Willis is ADMITTED into evidence.
************
The Full Commission find as facts and conclude as matters of law the following, which were entered into by the parties in the Pre-Trial Agreement, filed on June 3, 1994 and at the hearing as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at all relevant times.
2. G.A.B. Business Services, Inc., was the carrier on the risk.
3. The plaintiff's average weekly wage was $320.00, which yields a compensation rate of $212.34.
4. The parties' stipulated thirty-nine pages of medical reports and twenty-seven pages of personnel reports into evidence at the hearing.
5. The issue for determination is whether the plaintiff sustained a compensable injury by accident, or occupational disease to his right shoulder; and if so, to what benefits may he be entitled.
***********
The Full Commission adopt the Findings of Fact of the deputy commissioner except as modified and find as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a forty-nine year old married male who had been employed for twenty-seven years with Southern Screw Company as a header operator making blanks for screws.
2. In April of 1991, the plaintiff began working with defendant-employer as a temporary employee and he was hired as a permanent employee on June 3, 1991. Plaintiff's duties involved operating a buffer, which was a stationary machine. The plaintiff ran stainless steel tubing of varying sizes, which weighed six to seven pounds per length, into the buffer. The plaintiff used his right arm to feed the tubing.
3. After one year, the plaintiff went to the wet polisher job, where he ran pieces through a machine and used a crane to move loads of pieces.
4. At some point in 1992, the plaintiff experienced pain in his right shoulder, while working in the buffer area. The onset of pain was gradual in nature.
5. Plaintiff testified that one day in 1992, he felt as though he pulled something in his right shoulder as he proceeded to lift the control box. He further testified that the chain on the control box was broken that day causing him to have to lift the box up over the table and that as he lifted the box which weighed four to five pounds, he felt a pop in his right shoulder.
6. In a normal workday, an employee would move the control box from one side of the machine to the other four to five times. Whether the chain was broken would not affect the number of times the box must be lifted and moved, did not affect the weight of the box, and did not affect how the box was moved or operated.
7. At some point in 1992, the plaintiff told his supervisor that he had lifted the control box and his right shoulder popped. Plaintiff did not say that the chain on the control box was broken. In his recorded statement, the plaintiff stated that he never reported an accident and that his arm just started hurting and gradually kept getting worser (sic).
8. Plaintiff has failed to prove by the greater weight of the evidence that the pain he experienced in his shoulder was due to an unusual and unexpected or fortuitous cause.
9. The plaintiff sought treatment following the onset of pain from Drs. Andy White, Ronald Benfield, David Siegle and David Martin. Medical records indicate that plaintiff had complaints of pain in the right shoulder as early as February 27, 1992. He began missing time from work on March 17, 1992.
10. Dr. Martin opined that rotator cuff tendonitis or impingement syndrome is caused by activities which put stress on the rotator cuff, including lifting overhead and side-to-side work.
11. The February 23, 1993, MRI and report by Dr. Benfield noted that there were no areas of increased signal intensity in the rotator cuff which would indicate no abnormality within the tissue; and no indication of any supraspinatus damage or AC joint problems.
12. On April 7, 1993, Dr. Benfield performed arthroscopic surgery on plaintiff's right shoulder. The operative report indicates there was no pathology in the rotator cuff, no pathology in the posterior/anterior capsules and the underside of the rotator cuff on both the supraspinatus and infraspinatus areas and the glenoid showed only degenerative changes. No impingement syndrome was noted.
13. On May 3, 1993, the plaintiff returned to Dr. Benfield, complaining of increased pain after he used his arm too much over the weekend. Dr. Benfield referred the plaintiff to Dr. Siegle.
14. On August 19, 1993 an MRI was ordered, which showed a tear of the supraspinatus tendon, AC joint arthrosis and impingement syndrome.
15. On October 25, 1993, Dr. Martin performed a second arthroscopic surgery which showed a tear of the glenoid labrum, rotator cuff and impingement.
16. Dr. Martin testified that he did not know what had happened between the April and October surgeries, but that the activities the plaintiff had engaged in at home had increased his pain significantly and that those activities could have caused plaintiff's shoulder condition.
17. Dr. Martin testified that rotator cuff tears can be caused by holding the arm in an outstretched position, overhead activity, twisting in a single position over an extended period of time, repetitive motion, or a combination of activities. He defined repetitive motion as one that is repeated hour after hour, day after day, and week after week. Dr. Martin stated that impingement syndrome is most commonly caused by overhead activity and is commonly seen in weightlifters.
18. Dr. Martin testified that it was impossible for him to express an opinion that plaintiff was at an increased risk of developing a shoulder impingement at work, as plaintiff was his only patient who did the particular activities. When asked a second time, Dr. Martin stated that he could not say that the plaintiff's employment placed him at an increased risk over the general public.
19. Plaintiff has failed to prove by the greater weight of the evidence that he sustained an injury by accident on an unspecified date in 1992 when he had a gradual onset of pain in his right shoulder.
20. The greater weight of the evidence in the record fails to establish that plaintiff's condition is a compensable occupational disease which is peculiar to his employment and to which he was at a greater risk than members of the general public.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission conclude as follows
CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident at some unspecified date in 1992 when he experienced a gradual onset of right shoulder pain.
2. The plaintiff has failed to carry the burden of proof to establish by competent evidence that he contracted an occupational disease which was characteristic of and peculiar to his employment, within the meaning of N.C. GEN. STAT. § 97-53 (13).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enter the following
AWARD
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs, except that defendants shall pay the expert witness fee to Dr. David Martin, as previously ordered.
 S/ ____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ____________ COY M. VANCE COMMISSIONER
S/ ____________ J. RANDOLPH WARD COMMISSIONER